UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVON ARMANTE BELL, #898058,

        Petitioner,

v.                                                        CASE NO. 2:19-CV-11134
                                                           HONORABLE GERSHWIN A. DRAIN

DANIEL LESATZ,

        Respondent.
_____/

**OPINION & ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner Devon Armante Bell ("Petitioner") was convicted of carjacking, MICH. COMP. LAWS § 750.529a, armed robbery, MICH. COMP. LAWS § 750.529, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Wayne County Circuit Court.  He was sentenced to concurrent terms of 9 to 15 years imprisonment on the carjacking and armed robbery convictions and a consecutive term of 2 years imprisonment on the felony firearm conviction in 2016.  In his petition, he raises a claim concerning the effectiveness of trial counsel.  For the reasons set forth herein, the Court denies the habeas petition.  The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

**II.     Facts and Procedural History**

Petitioner's convictions arise from a carjacking and armed robbery that occurred on September 8, 2015 in Detroit, Michigan.  The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises out of a carjacking that occurred around 4:00 a.m. on September 8, 2015, in Detroit. The victim, Katie Clark, had just parked her Pontiac G6 on the street and was standing near the back driver's side door when a gold minivan pulled up next to her car. The passenger had a gun in his hand, and he got out of the minivan and told Clark to "give me all of your s***." Clark threw her keys at the passenger, and he got in the Pontiac G6 and drove away. Clark watched the driver of the van close the passenger van door and drive away. That same day, around 1:00 p.m., Detective Alfredo Jimenez discovered the stolen Pontiac G6 and a stolen Pontiac Torrent. Approximately nine men were standing around the cars, including defendant and another man, Terrell Cook. Defendant got in the Pontiac Torrent with a few others, and the two cars drove to a collision shop nearby. Cook stayed back and walked to a nearby house. Jimenez ordered scout cars to move in on the two cars, and approximately nine people were arrested in connection with the stolen cars, including defendant and Cook. The next day, Clark picked defendant and Cook out of a lineup, claiming that defendant was the gunman and Cook was the driver. At the joint bench trial, Clark said she told police that the gunman had a light skin complexion, but admitted that defendant did not have a light skin complexion. Cook was acquitted of all charges because the trial court determined that Clark only had a "split second" to look at Cook. However, the trial court convicted defendant because Clark had a much better ability to see defendant.
>
> [After sentencing, defendant filed a motion for new trial with the state trial court alleging that trial counsel was ineffective for failing to file a notice of alibi and subpoena supporting witnesses to testify at trial.  The trial court conducted an evidentiary hearing.]
>
> At the *Ginther* hearing, defendant claimed that his trial attorney, Ben Gonek, refused to call three alibi witnesses to the stand, Yvetta Gee, Yolanda Bell, and Charrita Brown, and instead only pursued a misidentification defense. According to the witnesses, defendant was at Gee's house at the time of the incident. At the hearing, Gonek testified that he told defendant that the alibi defense would not work because he did not find the three witnesses to be credible, the prosecution had jail

2

calls between defendant and the witnesses that were damaging to the alibi defense and may have undermined the misidentification defense, and defendant once told Gonek that he was not at Gee's house that night. After the hearing, the trial court reserved ruling until it had listened to the jail tapes that Gonek relied on. After listening to the tapes, the trial court stated the following:

> First of all, [Gonek] made the claim that he had listened to the tapes and the tapes reinforced his belief that there was not a valid alibi defense. When I listened to those tapes, from the very beginning, from tape number one, I just heard: You didn't do it, Devon. So and so was there. Such and such was there. Yeah. I was over so and so's. I didn't do it. So and so could tell me. There is no question in my mind that, call it alibi, call it excuse, call it trying to remember, trying to get the witnesses saying who was here, pull the phone records, that was the focus of easily the first fifteen calls. I mean—And excited talk. Because they hadn't met the lawyer, [Gonek], yet. And so, the excitement level was: Just tell him. You know that he's not gonna [sic] talk to me. Well, tell him to—It was just everywhere.
>
> * * *
>
> I'm of the belief that there was sufficient enough information provided to [Gonek] that, in this particular case, with the facts as he thought them to be, that he didn't listen to that tape as carefully as I did. I think that there was evidence to support, not a complete alibi. Because, of course, you know, the question is: Well, you don't know where somebody is if you're sleeping. That's always the bottom line. Well, how do you know if they were there at 12:00 if you were sleeping at 12:00. And then the answer is: Well I would know.
>
> It should have been prevented, the outcome in this case. It's likely that the outcome would have been different had those witnesses testified.

*People v. Bell*, No. 335350, 2017 WL 2664728, *1 (Mich. Ct. App. June 20, 2017) (unpublished).

The Court also adopts the statement of facts set forth in the prosecutor's brief on appeal before the Michigan Court of Appeals to the extent that those facts are supported by the record. *See* Pros. App. Brf., ECF No. 8-16, PageID.671-678.

3

In response to the trial court's decision to grant a new trial, the prosecutor filed an application for leave to appeal with the Michigan Court of Appeals, which was granted. Following briefing by the parties, the Michigan Court of Appeals reversed the trial court's decision and remanded the case to the trial court. *Bell*, 2017 WL 2664728 at *4. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Bell*, 501 Mich. 976, 906 N.W.2d 770 (2018).

Petitioner thereafter filed his federal habeas petition raising the following claim:

> He is entitled to a writ of habeas corpus where the Michigan Court of Appeals' decision on his ineffective assistance of trial counsel claim is an unreasonable application of Supreme Court precedent and is based on an unreasonable determination of the facts.

Respondent filed an answer to the petition contending that it should be denied for lack of merit.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

5

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529

6

U.S. at 412; see also *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); see also *Mitchell*, 540 U.S. at 16.

      The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); see also *Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

      Lastly, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

Habeas review is also "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Discussion

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to present three alibi witnesses, his two girlfriends, Yvette Gee and Chanita Brown, and his mother, Yolanda Bell, at trial to support his misidentification defense and provide an alibi. Petitioner claims that their testimony would have established that he was at Yvette Gee's house at the time of the carjacking and robbery which occurred around 4:00 a.m. Respondent contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.

8

There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performances. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> There are several reasons why we must reverse the trial court's order. First, the trial court never made a finding that Gonek's "performance fell

9

below an objective standard of reasonableness under the prevailing professional norms[.]" *Uphaus*, 278 Mich. App. at 185. Instead, the trial court skipped that required finding and went right to a conclusion that had the evidence been presented, a different result would have been probable. Of course we only get to that question if there is an initial finding that the attorney's conduct fell below the required standards. *See People v. Reed*, 449 Mich. 375, 400–401; 535 N.W.2d 496 (1995) ("Both prongs of the test must be fulfilled" before a finding of ineffective assistance of counsel can be made.).

Second, this is not a case where the attorney failed to investigate. The trial court recognized that Gonek had reviewed the jail tapes, but only determined that he must not have listened to them carefully enough. Additionally, Gonek testified that he interviewed defendant's three proposed alibi witnesses, and one of those proposed witnesses, defendant's mother, testified that she, Brown, and Gee met with Gonek and told him of their proposed testimony. And finally, the trial court never made a finding that Gonek had not interviewed these proposed witnesses. Thus, the question is whether Gonek's decision to refrain from calling witnesses whom he interviewed, which is presumed to be sound trial strategy, nonetheless deprived defendant of a substantial defense. *Trakhtenberg*, 493 Mich. at 52; Payne, 285 Mich. App. at 190.

As the trial court recognized, alibi and misidentification defenses are not mutually exclusive or inconsistent. The record shows that Gonek put forward a misidentification defense based primarily upon the victim's limited ability to view her assailants and the resultant description that varied from defendant's actual appearance.[3] Defendant was, therefore, not deprived of a substantial defense; instead, as the trial court ruled, defendant was not provided as robust a defense as he would have received had those witnesses testified.

The trial court's exclusive explanation for finding prejudice (though not in those terms) was that the jail conversations contained a consistent theme—that defendant did not commit the crime and was with Gee that night. While not stated in precise terms, the trial court essentially determined that Gonek did not properly investigate the jail tapes. But that criticism amounts to impermissible second-guessing through the use of hindsight. Indeed, this conclusion ignores the command that "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances ...." *Reed*, 449 Mich. at 391, quoting *Kimmelman v.*

---

[3]There is no suggestion that Gonek's cross-examination of the victim was in any way deficient.

> *Morrison*, 477 U.S. 365, 381; 106 S. Ct. 2574; 91 L. Ed. 2d 305 (1986). Courts must remember when applying this "highly demanding" burden that "[t]here are countless ways to provide effective assistance in any given case" and that "unless consideration is given to counsel's overall performance, before and at trial, it will be 'all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Reed*, 449 Mich. at 390–391, quoting *Kimmelman*, 477 U.S. at 386 (emphasis added; citation omitted).
>
> Here, Gonek testified to several circumstances other than the prosecutor's threat of using the jail tapes that affected his decision to not call these proposed alibi witnesses. For instance, at that time, defendant was charged in another similar crime that occurred in close proximity to the instant one,[4] and defendant claimed that a surveillance video from that case showed he did not commit this crime. But Gonek also concluded that the video showed defendant's alibi was incomplete. Additionally, two of the proposed alibi witnesses did not support his alibi defense,[5] and the victim had fairly significant discrepancies in her identification of defendant. None of this testimony was rejected by the trial court, and it reveals that at the time the strategic decision was made, Gonek had to consider more than just the content of the jail tapes. We cannot conclude that defendant overcame the strong presumption that Gonek's performance fell within the wide range of norms.

*Bell*, 2017 WL 2664728 at *3 (footnotes in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338,

---

[4]The charge was later dismissed.

[5]There were inconsistences among the witnesses' testimony at the *Ginther* hearing. For instance, Gee said she picked her cousin up along with defendant the night before the incident, but defendant later testified that his cousin was not with them at that time. Brown testified that she saw defendant on the porch around 4:30 a.m., but defendant later testified that he went out onto Gee's porch at midnight. Additionally, Brown omitted from her affidavit the fact that she drove to Gee's house.

11

356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence."  *Towns*, 395 F.3d at 258.  That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy.  When making strategic decisions, counsel's conduct must be reasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.  The failure to call a known alibi witness can constitute ineffective assistance of counsel, *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004), but counsel is not required to call a witness whose credibility is questionable.  *Thurmond v. Carlton*, 489 F. App'x 834, 840 (6th Cir. 2012).  The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, the record indicates that trial counsel's performance was not deficient.  At the evidentiary hearing, trial counsel testified that he interviewed the three potential witnesses, discussed an alibi defense with Petitioner, and advised him against presenting an alibi defense.  Counsel explained that Petitioner's mother gave two different accounts to him and did not provide an alibi for when the crime occurred and that he did not think that the other two women could support an alibi defense.  ECF No. 8-11, PageID.393-395.  Counsel testified that he had concerns that the alibi was fabricated because Petitioner made statements to him about another case in which he was charged with receiving and concealing stolen property arising from a different carjacking incident on the same night and that if those statements were true, then

Petitioner was not at Gee's house at the time of the instant carjacking. *Id*. at PageID.400-403. Counsel was also concerned about the alibi because Petitioner would not show him text messages from the night in question, the prosecution had audio recordings of his conversations with the witnesses/family members which could undermine the defense, the witnesses would be subject to cross-examination, and Petitioner gave him several different versions of where he was at the time of the crime. *Id*. at PageID.404-405, 407-408, 415. Counsel further testified that he believed that Petitioner had a solid misidentification defense based on the victim's description of the perpetrator. *Id*. at PageID.395-396, 407.

Counsel was thus aware of the potential alibi witnesses, investigated those witnesses, and had legitimate reasons not to present them at trial – namely his ethical concerns about the veracity of the alibi witnesses and his practical concerns about the viability of the defense. Counsel's decision not to call Petitioner's two girlfriends and his mother as alibi witnesses due to concerns about their credibility and their ability to provide a valid alibi defense was reasonable under the circumstances. *See, e.g., Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012) (counsel's decision not to pursue an alibi defense was reasonable given concerns about family members' credibility); *Moore v. Parker*, 425 F.3d 250, 253-54 (6th Cir. 2005) (counsel was not ineffective for failing to call family members as witnesses where they could not provide an airtight alibi).

To be sure, the record indicates that there were issues/discrepancies with all three witnesses' potential testimony. For example, Yvette Gee testified at the evidentiary hearing that she picked up her cousin and Petitioner the night before the

13

crime, ECF No. 8-11, PageID.418, 423, but Petitioner testified that his cousin was not with them at that time. *Id*. at PageID.507. Additionally, Chanita Brown testified at the evidentiary hearing that she called Petitioner shortly after midnight and he told her that he was staying at Gee's house. When he did not call her at 3:00 a.m. as he usually does, she drove to Gee's house and saw him smoking a cigarette on the porch at about 4:30 a.m. *Id*. at PageID.434-436. This testimony conflicts with her affidavit in which she stated that she spoke with Petitioner around 3:00 a.m. and did not mention driving to Gee's house and seeing Petitioner outside. ECF No. 8-16, PageID.704. It also conflicts with a jail call recording in which she discussed exculpatory evidence with Petitioner, but did not mention seeing him at the time of the crime, ECF No. 8-11, PageID.453-457, as well as Petitioner's own testimony at the evidentiary hearing that he went outside Gee's house to smoke a cigarette around midnight, but was in the house the rest of the night. *Id*. at PageID.492-493, 508-509. Lastly, Petitioner's mother, Yolanda Bell, could not account for Petitioner's whereabouts at the time of the crime given her evidentiary hearing testimony that she picked him up at Gee's house around 7:00 or 7:30 a.m. and the carjacking occurred at 4:00 a.m. *Id*. at PageID.470, 484. She was also impeached with jail call recordings in which she told Petitioner that she knew he was innocent because he was home with her at the time of the crime. *Id*. at PageID.479-483.

    Given such issues with the purported alibi witnesses, trial counsel may have also reasonably believed that contesting the prosecution's case and casting doubt on the credibility of the carjacking victim, the prosecution's primary witness, would be more effective than presenting an alibi defense which could be subject to significant

challenge. *See, e.g., Hale v. Davis*, 512 F. App'x 516, 522 (6th Cir. 2013) (stating that sometimes it may be "better to try to cast pervasive suspicion of doubt" by challenging the prosecution's case than to "strive to prove a certainty that exonerates"). To be sure, the record indicates that trial counsel presented a misidentification/reasonable doubt defense in which he cross-examined the victim and emphasized the differences between her physical description of the perpetrator as given to 911 and the police shortly after the incident and Petitioner's actual physical characteristics, and noted that several other males, who were not put in a line-up, were arrested near the victim's recovered vehicle. ECF No. 8-7, PageID.210-216, 308-310. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective assistance of counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner fails to show that trial counsel's performance was deficient or that he was deprived of a substantial defense. He thus fails to establish that trial counsel was ineffective under the *Strickland* standard. At a minimum, the Michigan Court of Appeals' decision to that effect is reasonable. Habeas relief is not warranted on this claim.

**V.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claim. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner can appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a). Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal. This case is closed.

**IT IS SO ORDERED**.

                                                  s/Gershwin A. Drain
                                                  GERSHWIN A. DRAIN
                                                  UNITED STATES DISTRICT JUDGE

Dated: November 30, 2021